## Wyatt *vs.* Savage.

In conveyances by the *Commonwealth of Massachusetts* to A. of lot No. 7 — to B. of lot No. 71 — and to C. of lot No. 102, reference in each case was made to "*Holland's plan.*" Nos. 7 and 71 were parallelograms, and lay at nearly right angles, the end of No. 7 abutting upon No. 102, which was an irregular lot laying betwen 7 and 71 — there being no monuments except at the exterior bounds of Nos. 7 and 71. By mistake of *Holland*, the Surveyor, the length of No. 7, united to the width of 71 and 102, exceeded by 46 rods, on the plan, the true length as ascertained by actual admeasurement on the surface of the earth. *Held*, that this loss by deficiency, must be borne by A. B. & C. in proportion to the *length* of No. 7, and the *width* of Nos. 71 and 102.

This was a writ of entry to recover possession of certain lands situated in *Bangor* in this county. Both parties claimed under deeds from the *Commonwealth of Massachusetts*; the demandant, lot No. 71, and the defendant, lot No. 7; both deeds referring to *Holland's plan*. The defendant had in possession, and claimed the right to hold, according to the length of the line of his lot as laid down on said plan, though he thereby extended his lot across one end of No. 71, the lot of the demandant; — lot No. 7, by a mistake of the surveyor, being laid down upon the plan larger than the actual quantity of land would warrant. The plan

of *Holland* referred to, so far as it affected the question raised in this case, is represented by the sketch below.

The description of the demandant's lot, in the deed from the *Commonwealth* to his grantor, *March* 3, 1807, was as follows, *viz:* " A lot of land lying in *Bangor* being numbered 71, as was surveyed by *Park Holland* in the year 1801, bounded as follows, *viz:* Beginning at the southerly bank of *Kenduskeag* stream *at a hemlock*, being the northeasterly corner of lot No. 72 — thence southerly on the line of said lot, 320 rods — thence easterly at right angles, 50 rods — thence northerly to the stream, 320 rods — thence up the stream to the first bounds, containing 100 acres, *agreeably to the return of Park Holland*, made to the aforesaid Agent, and his *certificate* to the said heirs," (the grantees.)

The description of the defendant's lot in the deed of the *Commonwealth* to his grantor, *March* 11, 1802, was as follows, *viz:* " A lot of land lying in *Bangor* being numbered *seven*, as was surveyed by *Park Holland* in the year 1801, and bounded as follows, *viz.:* Beginning at a stake and stones on the bank of the *Penobscot* river, being the corner of lot No. 6 — thence running west 45 degrees north 314 rods — thence north 45 degrees east fifty one rods — thence east 45 degrees south to the bank of the river, thence down said river to the first mentioned bounds, containing 100 acres, *agreeably to the return made by Park Holland* to the aforesaid agent, and his *certificate* to the said *Hammond*."

There was no proof of any monuments made at the time of the survey. But *Gilmore*, who surveyed and made a plan of the lots by order of Court, in his report stated, that he " began at a *birch tree* standing on the bank of the *Kenduskeag* stream, supposed to be the corner of No. 71 and 72, marked," &c. And it was proved that this tree was near the site and on the line of the *hemlock* mentioned in the deed of the *Commonwealth*.

*Starrett,* for the demandant.

*Abbott,* for the defendant.

MELLEN C. J. delivered the opinion of the Court.

The title of both the parties depend on deeds, referring to *Holland's* plan and the certificates by him given to the respective grantees of the *Commonwealth:* of course, in ascertaining and deciding upon their rights, we must examine with care the

documents referred to in the deeds.    In settling the question, *priority* of title is of no importance.    No question could ever have arisen, of the kind before us, if *Holland's* survey and plan had been made with perfect accuracy; but they were not; for when the lots are surveyed, according to the plan and the length and breadth of the lots, as ascertained by the scale on which the plan is made, and marked out on the surface of the earth, there is found to be a deficiency of land, and there is, of necessary consequence, an interference of one lot with another; such is the case in the instance before us.    The lots on *Holland's* plan are platted on a scale of two hundred rods to an inch.    The lot of the demandant is No. 71, and runs from *Kenduskeag* stream in a *southwest* direction.    The lot of the tenant is No. 7, and runs from *Penobscot river* nearly in a *northwest* direction towards lot No. 71; and on the plan, a small irregular lot, No. 102, is laid down, extending southwesterly between the *southeast side* of lot No. 71, and the *northwest end* of lot No. 7, which last named lot is described in the deed to *Hammond* to be *three hundred and fourteen* rods long, though when measured on the plan, according to its scale, it does not appear to be more than *three hundred and twelve* rods.    The tenant contends that he has a right to extend his lot as far as his deed would carry him, *viz.*: 314 rods: but the consequence of such extension would be that it would reach over the whole width of lot No. 102, and also cover a part of lot No. 71, and thus the plan of *Holland*, which must be considered as a part of the deed to *Hammond*, would be expressly contradicted and thrown into confusion.    How this error in the plan was occasioned we know not; but there is one fact in the case, by which we may arrive at a correct conclusion as to the effect which the error in the plan can have upon the demandant's lot and his right to sustain the present action.    The report states that it was proved that the hemlock tree near the *Kenduskeag* stream, mentioned in the report of *Gilmore*, was near the site, and on the line of the hemlock mentioned in the certificate of *Holland* of the bounds of lot No. 71, and making the northwest corner of that lot.    Here then we have one of the original monuments, and hence we know precisely the true position of lot No. 71, not only on *the plan*, but on *the earth* : this lot is fifty rods

wide on the plan, and the northwest side line of it is an immovable boundary, which is important in the decision of this cause. The lot No. 102 at the southwest end of it where it adjoins lot No. 7, is twenty-five rods wide. By inspection of the plan and application of the scale to it, the length of lot No. 7 appears to be three hundred and fourteen rods, and lot No. 71, by the same scale, appears to be fifty rods wide ; thus representing the distance between the northwest side line of No. 71, and the southeast end of No. 7, *three hundred and eighty-nine rods ;* but by the survey and plan of *Gilmore* it is found that the distance between those two bounds is only *three hundred and forty-three rods ;* so that there is a deficiency of *forty-six* rods between the northwest side line of the demandant's lot No. 71, and the southeast end of the tenant's lot No. 7, at *Penobscot river.* And according to the principles which this Court has adopted and applied in similar cases, the loss, which through mistake has been occasioned by this deficiency, must be borne by the owners of the lots, laid out on this piece of land, in proportion to the *length* of the tenant's lot No. 7, and the *width* of the lots No. 71 and 102. Dividing the deficiency of forty-six rods upon this principle, which principle is not disputed, the result is, that lot No. 7 must lose in length *thirty-seven* rods and a fraction ; lot No. 102 must lose a fraction less than *three rods ;* the south east part of lot 71, being *eleven rods* wide, and which belongs to *William Emerson,* must lose of its width *one rod* and a fraction, and the demandant's part, of said lot No. 71, being thirty-nine rods wide, must lose of its width *four rods* and a fraction. Applying the above principle in apportioning the loss occasioned by the before mentioned deficiency, it is distinctly ascertained that a small portion of the defended premises, being about two rods in width at the widest end, belongs to the demandant.

We are of opinion that the ruling of the Judge was correct in *principle,* and that the demandant is entitled to judgment ; though since the trial the length of some of the lines has, by consent, been more accurately ascertained, which, of course, varies some of the facts, in the above particular, from those stated in the report and ruling of the Judge.